IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARTIN FREDERICK and BARBARA FREDERICK, his wife, | ) ) ) |
| Plaintiffs, | ) ) |
| -vs- | ) ) |
| | ) Civil Action No. 05-514 |
| ELIAS HANNA, JOHN JOHNSON, MANOR BOROUGH, OFFICER STEFFEY and PENN TOWNSHIP, | ) ) ) ) ) |
| Defendants. | ) |

AMBROSE, Chief District Judge.

## OPINION and ORDER OF COURT

### SYNOPSIS

In this civil action, Plaintiffs claim that Defendants, who are police officers and their employers, violated their rights under 42 U.S.C. § 1983 and the state and federal constitutions, and committed several common law torts. All of the claims arise out of a series of events stemming from a traffic stop and subsequent confrontation at Plaintiffs' place of business, and culminating in the arrest of husband-Plaintiff and both Plaintiffs' guilty pleas on charges of disorderly conduct.

In brief, Plaintiffs contend that Defendant Hanna, a police officer employed by Manor Borough, approached Plaintiffs' business premises with the stated purpose of investigating an expired vehicle registration plate. A confrontation ensued, during which both Defendant Steffey, a police officer employed by Penn Township,

and wife-Plaintiff arrived on the scene.   Husband-Plaintiff was arrested and transported to the police department, and then Officers Hanna and Johnson transferred him to county prison. Both Plaintiffs were charged with various crimes, and each pleaded guilty to disorderly conduct.   They were not, ultimately, prosecuted on any other charge.

All Defendants have filed Motions for Summary Judgment. Officer Steffey and Penn Township seek judgment on all of Plaintiffs' claims against them; the remaining Defendants seek judgment on all claims other than a single excessive force claim.

For the following reasons, Defendants' Motions will be granted in part and denied in part.

**DISCUSSION**

## A. FACTS

Unless otherwise indicated, the following facts are undisputed.

On April 19, 2003, husband-Plaintiff and Plaintiffs' employee, John Konechny, were washing a 1995 silver Toyota Tercel at a car wash.  In order to wash the car, husband-Plaintiff removed the license plate, and then replaced it prior to leaving the car wash.  While at the car wash, Defendant Hanna, a Manor Borough police officer, observed them washing the car without a plate, and then saw husband-Plaintiff fasten a plate onto the car.  The plate was not securely fastened to the vehicle; it was falling off.   When the vehicle left the car wash, Officer Hanna followed, and, at some point while on the roadway, observed that the registration

sticker on the plate was expired.  Officer Hanna then followed the car to Plaintiffs'

place of business, and activated his lights.  The parties dispute whether the lights

were activated at the time that Defendant Hanna pulled into Plaintiffs' property, or

during the drive from the car wash to Plaintiffs' property.

At some point, Defendant Hanna radioed dispatch to call in the license plate,

and received a report of a "dead" plate.  A dead plate indicated either that the

vehicle lacked insurance, or that the plate or vehicle was stolen.  Defendant Hanna

was also advised that the license plate did not match the car that the men were

driving.

Husband-Plaintiff and Mr. Konechny drove the vehicle into a garage located

at Plaintiffs' place of business, a detail shop located at 160 Race Street.  The garage

was not open to the general public, but only to employees, former employees, or

casual laborers. Defendant Hanna stopped his vehicle at the entrance to the garage,

blocking the other vehicle into the garage.  The two men exited the Toyota, and

husband-Plaintiff removed the license plate from the car and placed it in the garage.

 Husband-Plaintiff testified that he placed the plate into a plastic file mounted to

the wall in front of the garage.  There is also some evidence that he placed the plate

toward the rear of the garage.  Defendant Hanna then asked him for the plate;

husband-Plaintiff did not, however, produce the plate that was removed from the

vehicle.  Husband-Plaintiff waved his arms, used profanity, and yelled at Defendant

Hanna at some point during the confrontation.  At some point, husband-Plaintiff

obtained a license plate from another vehicle and offered it to Defendant Hanna.

At some point thereafter, Defendant Hanna entered the garage and obtained the invalid license plate.  He obtained the plate on his own, he testified, because he was concerned that the evidence could be destroyed had he waited to obtain a warrant.   During the course of events, husband-Plaintiff repeatedly ordered Defendant Hanna to leave his property.

At some point, Defendant Hanna obtained Mr. Konechny's drivers license number and called it in to dispatch.  Mr. Konechny attempted to write down Defendant Hanna's license plate number, and Defendant requested that he stand in front of the vehicle.  Husband-Plaintiff then attempted to go back into the garage and close the garage door; Defendant Hanna tried to pull the door open. Defendant Hanna then called for backup.   Either before or after the garage door incident, Defendant Hanna told husband-Plaintiff that he was under arrest; husband-Plaintiff then moved to the back of the garage.   Defendant Hanna perceived that he was attempting to avoid the arrest.

Defendant Hanna then asked husband-Plaintiff to exit the garage and put his hands on the police car.  Husband-Plaintiff put his hands behind his back, and then, as he was being handcuffed, thought he had done nothing wrong, and then spun around to face Defendant Hanna, with his hands at his sides.  He then avers that Defendant Hanna started to choke him.  At some point thereafter, Defendant Hanna pepper sprayed him.  Plaintiffs aver that husband-Plaintiff walked away from the officer about six to eight feet, and then was sprayed.  He was then handcuffed, and placed in Defendant Hanna's police car.

Plaintiffs proffer that husband-Plaintiff remained in the police car, without medical treatment, for up to forty-six minutes, before he ultimately received treatment at the police station.  There is no allegation of injury from the pepper spray, other than temporary burning.

After husband-Plaintiff was placed in the police car, backup police officers arrived, including Defendant Steffey, a Penn Township police officer.   Defendant Steffey had been dispatched to assist Officer Hanna with a disorderly person and aggravated assault.  Defendant Hanna told Officer Steffey that he had witnessed a man put a plate on the car at the car wash, had followed the car, turned on his lights, the car did not stop but turned into the garage, and then the man came out and took the plate off the car.  He also told Defendant Steffey that there had been an altercation between him and husband-Plaintiff.

Penn Township had a general policy to obtain a vehicle identification number ("VIN") in the case of a falsified plate, or a plate removed from a vehicle, in order to verify ownership and determine whether the vehicle is stolen.

Defendant Steffey then entered the garage, walked up to the car, and attempted to get the VIN off the dashboard.  He experienced some problem with transmitting the VIN number through Defendant Steffey's radio, so he entered the garage for a second time to get the VIN.  Wife-Plaintiff then arrived, and blocked his path.  He advised her that he needed to obtain the VIN from the vehicle, and that he would leave as soon as he had done so.  He obtained the VIN from the dash and properly transmitted the information.    Wife-Plaintiff avers that when she

attempted to move toward the vehicle to show the officers the VIN on the door post, Defendant Steffey shoved her backwards and she caught herself by grabbing the car. She suffered no immediate pain, but later received medical treatment for a whiplash-type injury. After the incident, she left the garage to go down to a car lot; when she returned, the officers were gone. She then proceeded to the police station.

Husband-Plaintiff was, eventually, transported to the Manor Borough Police Department, where he received medical treatment for the effects of the pepper spray. He was then transported to a holding cell. Defendant Johnson was not involved in any of the incidents alleged prior to the transportation of husband-Plaintiff to the Westmoreland County Jail on April 20, 2003.

Husband-Plaintiff avers that at the County Jail, he saw wife-Plaintiff and their business partner. He tried to speak with his wife, but Defendant Hanna grabbed his hair and shoved him backwards and forwards, tripped him, and tried to drive his face into the curb. Plaintiffs further allege that Defendant Johnson grabbed husband-Plaintiff by the hair and pulled him towards the ground.

Wife-Plaintiff said that this was police brutality, and then both Defendants Hanna and Johnson screamed that "she better get back" or she would be arrested. Defendant Hanna told husband-Plaintiff that he would "thump" him if he made a false move, stepped out of line, or looked at him cross-eyed.

Husband-Plaintiff was charged with aggravated assault, simple assault, and resisting arrest, tampering with or fabricating physical evidence, disorderly conduct,

6

and criminal mischief.    Wife-Plaintiff was not arrested, but was charged with obstructing administration of law or other governmental function, and disorderly conduct. Each Plaintiff ultimately pleaded guilty to a charge of disorderly conduct;[1] the remaining charges were not prosecuted.

## B. SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).   In considering a motion for summary judgment, the Court must examine the facts in a light most favorable to the party opposing the motion.  International Raw Materials, Ltd. V. Stauffer Chem . Co., 898 F. 2d 946, 949 (3d Cir. 1990).  The moving party bears the burden of demonstrating the absence of any genuine issues of material fact.  United States v.

---

[1]18 Pa.C.S. § 5503 reads, in pertinent part, as follows:

 (a) OFFENSE DEFINED. --A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

(1) engages in fighting or threatening, or in violent or tumultuous behavior;

(2) makes unreasonable noise;

(3) uses obscene language, or makes an obscene gesture; or

(4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

 (b) GRADING. --An offense under this section is a misdemeanor of the third degree if the intent of the actor is to cause substantial harm or serious inconvenience, or if he persists in disorderly conduct after reasonable warning or request to desist. Otherwise disorderly conduct is a summary offense.

Onmicare, Inc., 382 F. 3d 432 (3d Cir. 2004).  Rule 56, however, mandates the entry of judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.  Celotex Corp. V. Cattrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 265 (1986).

## C. DEFENDANTS' MOTIONS

A plaintiff may bring a § 1983 action if he alleges that a person acting under color of state law deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States.  42 U.S.C. § 1983.  In order to state a cause of action under § 1983, a plaintiff must demonstrate that "(1) the defendants acted under color of [state] law; and (2) their actions deprived [the plaintiff] of rights secured by the Constitution or federal statutes."  Anderson v. Davila, 37 V.I. 496, 125 F.3d 148, 159 (3d Cir. 1997).

### 1. First Amendment

I first address Defendants Manor Borough, Hanna, and Johnson's motion for summary judgment on Plaintiffs' First Amendment claim.  Plaintiffs argue that Defendants violated their First Amendment rights in two particulars.[2]  They aver that wife-Plaintiff, while outside the courthouse, said that the Officers' actions toward her husband were police brutality, and the officers then "started screaming at her that she better get back or she was going to be arrested."  Second, they aver

---

[2]Although their Amended Complaint potentially implicates additional First Amendment issues, Plaintiffs defend only these two grounds for such a claim.

that Officer Hanna told Mr. Frederick that he would "thump" him if he "made a false move, stepped out of line, or looked at [the Officer] cross-eyed."  In challenging those claims, Defendants argue only that First Amendment claims typically arise in the employment context, or from the restriction of speech on public property. They point out, quite cursorily, that Plaintiffs have failed to adduce evidence of either type, and that "the circumstances of this case do not rise to the level [of] a First Amendment violation."

Contrary to Defendants' assertion, however, Plaintiffs have proffered evidence that the alleged First Amendment violations occurred outside of the County Jail, on public property.  Therefore, Plaintiffs have undermined Defendants' only potentially applicable challenge to this set of claims.  Defendants do not contend, for example, that either of the Plaintiff's alleged "speech" was unprotected.  In other words, their argument is inapposite to the facts, and they do not address any other possible deficiencies in Plaintiff's claim.  Despite the Plaintiffs' likewise threadbare defense of their free speech claim, I decline to sua sponte analyze whether there are other reasons that the present facts fail to rise to the level of a constitutional violation.   Therefore, Defendants have not demonstrated that they are entitled to the entry of judgment on Plaintiffs' free speech claims, and I will deny their Motion in that regard.[3]

---

[3]For the same reasons, Defendants have not met their burden of demonstrating entitlement to qualified immunity on the First Amendment claim.  "A court evaluating a claim of qualified immunity 'must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation.'"  Hill v. Borough of Kutztown, 455 F.3d 225 (3d Cir. 2006).  Here, Defendants have not established that Plaintiff failed to allege the deprivation of a

### 2. **Fourteenth Amendment**

Next, I address Defendants' Motion for summary judgment on Plaintiffs' due process claim.[4] The substantive due process clause of the Fourteenth Amendment requires application of a "shocks the conscience" standard, in which "only the most egregious [executive] official conduct can be said to be 'arbitrary in the constitutional sense.'" Collins v. Harker Heights, 503 U.S. 115, 129, 117 L. Ed. 2d 261, 112 S. Ct. 1061 and 126 (1992).   The threshold question is whether the conduct at issue is "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Kaucher v. County of Bucks, 455 F. 3d 418, 425 (3d Cir. 2006).

The standard to be met before conduct can be deemed "conscience shocking" is heightened as the situation intensifies or is deemed an emergency, requires judgment on the spot with little opportunity to contemplate one's actions, and entails countervailing governmental interests. Sacramento v. Lewis, 523 U.S. 833, 118 S. Ct. 1708, 1718, 140 L. Ed. 2d 1043 (1998).  "[A] brief skirmish giving rise to minor injuries" does not rise to the level of a constitutional violation. Metcalf v. Long, 615 F. Supp. 1108, 1121 (D. Del. 1985).   Similarly, every instance even of unequivocally excessive force does not give rise to a Fourteenth Amendment violation. Morrison v. Martin, 755 F. Supp. 683, 690 (D. N. C. 1990).

---

constitutional right, and they raise no argument based on the second prong of the qualified immunity analysis.

[4]Plaintiffs appear to have abandoned any claim under the procedural due process or equal protection clause of the Fourteenth Amendment.

It is not clear which action, in particular, Plaintiffs claim violated their right to substantive due process.  Plaintiffs do not isolate nor discuss any particular incident that they intend to prosecute under the due process umbrella.  Given the intimation that Plaintiffs intend to base such a claim on Officer Steffey's shove of wife-Plaintiff, I specifically find that the <u>de minimis</u> force used in that context was not, as a matter of law, so outrageous and egregious so as to violate the Constitution.  Absent further guidance from Plaintiffs, I decline to speculate regarding any additional potential claims.   Plaintiffs cannot proceed under any substantive due process claim.[5]

## 3. <u>Fourth Amendment</u>

### a. <u>Excessive Force</u>

Next, I address Defendants' challenge to Plaintiffs' excessive force claims.  Plaintiffs appear to allege the use of unreasonable force in the following particulars: Defendants Johnson's and Hanna's use of force against husband-Plaintiff at the county jail; Defendant Hanna's use of pepper spray on husband-Plaintiff; and Defendant Steffey's push or shove of wife-Plaintiff while at the Race Street garage.  Defendants move for summary judgment only on claims involving the latter two incidents.   They argue, essentially, that the officers' conduct was reasonable under the circumstances.

Claims that law enforcement officers have used excessive force in the course

---

[5]Moreover, because Plaintiffs have failed to make out a constitutional violation, the officers are entitled to immunity on any substantive due process claims.  <u>Bennett v. Murphy</u>, 274 F.3d 133, 136 (3d Cir. 2002).

of an arrest are to be evaluated under Fourth Amendment "reasonableness" standards.  Graham v. Connor, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989).  The inquiry is whether the officers' actions are objectively reasonable "in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."  Id. at 397.

The reasonableness of a particular use of force, therefore, must be assessed with "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  Id. at 396.  Other factors include "the duration of the [officer's] action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time."  Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997). Whether the force used was reasonable is usually a jury question.  McCracken v. Freed, Np. 03-4923, 2006 U.S. Dist. LEXIS 924, at *18 (E.D. Pa. Jan. 6, 2006).

In this case, there are genuine issues of material fact that preclude the entry of judgment on Plaintiffs' excessive force claim against Defendant Hanna.  For example, accepting the facts in the light most favorable to Plaintiffs, husband-Plaintiff walked six to eight feet away from the Officers immediately prior to being sprayed, there is no suggestion that he was armed, and no suggestion that Officer Hanna had to contend, in any significant respect, with other persons at that

moment.  The parties' and witnesses' conflicting testimony, as well as the fair amount of confusion in the chronology of events at issue, precludes me from determining as a matter of law that Defendant Hanna's use of pepper spray was objectively reasonable under the circumstances.

For this reason, too, I must deny Defendant Hanna's claim to qualified immunity regarding his use of force.   "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Couden v. Duffy, 446 F.3d 483, 492 (3d Cir. 2006).   "Although qualified immunity is a question of law determined by the Court, when qualified immunity depends on disputed issues of fact, those issues must be determined by the jury." Monteiro v. City of Elizabeth, 436 F.3d 397, 405 (3d Cir. 2006).  Finally, a defendant has the burden to establish that he is entitled to qualified immunity.  See Beers-Capitol v. Whetzel, 256 F.3d 120, 142 n.15 (3d Cir. 2001).  Here, evaluation of the situation confronted by Defendant, as well as the precise nature of his conduct, rests on disputed facts that must be resolved by a jury.

I reach a different conclusion, however, with respect to Defendant Steffey's alleged shove of wife-Plaintiff. Wife-Plaintiff was not arrested, and therefore cannot maintain a Fourth Amendment claim against Defendant.  Buss v. Quigg, 2002 U.S. Dist. LEXIS 15092, at *7 (E.D. Pa. Aug. 1, 2002).  Furthermore, for the reasons set forth supra, she cannot maintain an excessive force claim under the substantive due process clause of the Fourteenth Amendment.   Plaintiffs suggest no other

13

potentially applicable cause of action.  Summary judgment, therefore, will be granted against Plaintiffs for all claims arising out of Defendant Steffey's use of force against wife-Plaintiff.

### b.  Search & Seizure

I next address Defendants' argument that they are entitled to qualified immunity regarding Fourth Amendment claims resting on the arrest of husband-Plaintiff, the corresponding search of the Plaintiffs' garage, and any claim regarding wife-Plaintiff.  Plaintiffs do not attempt to defend their Fourth Amendment claim surrounding husband-Plaintiff's initial arrest; I assume, therefore, that they have abandoned that claim.[6]  Instead, they assert that their Fourth Amendment claims surround the alleged seizure of the Toyota's VIN, the search of the garage to obtain the VIN and license plate, and the seizure of the license plate that husband-Plaintiff removed from the vehicle.[7]

---

[6]In any event, it is unlikely that Plaintiffs could maintain such a claim.  "[T]he Fourth Amendment does not forbid a warrantless arrest for a minor criminal offense, such as a misdemeanor seatbelt violation punishable only by a fine."  Pepiton v. City of Farrell, No. 05-573, 2005 U.S. Dist. LEXIS 23873, at *9  (W.D. Pa. Oct. 10, 2005).  Even the commission of a minor offense in an officer's presence justifies an arrest, and without violating the Fourth Amendment.  Id. at *8.  In Pepiton, the Court found that there existed probable cause for the arrest of a person driving a vehicle with an expired inspection sticker.  Id. at *9.  Although Plaintiffs dispute whether Defendant Hanna saw the expired sticker at the car wash or after he pulled out onto the road, they do not dispute that he did, in fact, see the expired sticker prior to the arrest.  Pennsylvania law requires that "[e]very registration plate shall, at all times, be securely fastened to the vehicle to which it is assigned."  75 Pa. C.S. § 1332(a).  Further, an expired registration sticker is a violation of state law.  75 Pa.C.S.A. § 1301(a).

[7]Plaintiffs also appear to argue that Defendant Steffey's shove of wife-Plaintiff in the garage constituted a seizure, because it restricted her freedom of movement.  "A person is seized for Fourth Amendment purposes only if he is detained by means intentionally applied to terminate his freedom of movement."  Berg v. County of Allegheny, 219 F.3d 261, 269 (3d Cir. 2000) (emphasis added).  This claim cannot survive for the same reasons that it cannot survive couched as a false imprisonment claim, as discussed infra; Defendant Steffey's conduct did not restrict wife-Plaintiff's freedom of movement in a legally significant manner, in this context.

A warrantless seizure or search of property typically requires a showing of both probable cause and exigent circumstances. United States v. Burton, 288 F.3d 91, 100 (3d Cir. 2002).  Exigent circumstances exist when officers reasonably believe that a person is in imminent danger, by "hot pursuit of a fleeing felon," "imminent destruction of evidence," or "the need to prevent a suspect's escape." Minnesota v. Olson, 495 U.S. 91, 100, 110 S. Ct. 1684, 109 L. Ed. 2d 85 (1990); Parkhurst v. Trapp, 77 F.3d 707, 711 (3d Cir. 1996).

The parties submissions also implicate the principle that police may seize incriminating evidence in plain view during the course of a lawful search.  United States v. Menon, 24 F. 3d 550 (3d Cir. 1994). Moreover, under the plain view doctrine, "not only must the officer be lawfully located in a place from which the object can be plainly seen, but he or she must also have a lawful right of access to the object itself." Horton v. Cal., 496 U.S. 128, 137, 110 S. Ct. 2301, 110 L. Ed. 2d 112 (1990); United States v. Sparks, 291 F.3d 683, 690 (10th Cir. 2002).

Typically, a Fourth Amendment claim cannot be based on the "seizure" of a VIN number. "An automobile's [VIN], located inside the passenger compartment, but visible from outside the car, does not receive Fourth Amendment protection: it is unreasonable to have an expectation of privacy in an object required by law to be located in a place ordinarily in plain view from the exterior of the automobile." United States v. Ellison, No. 04-1925, 2006 U.S. App. LEXIS 22558, at *10  (6th Cir. Sept. 5, 2006).  Indeed, the events that precipitated this litigation arose when the vehicle, and its VIN, were out in a public location.  Moreover, the fact that wife-Plaintiff

attempted to show Defendant Steffey the VIN number on the vehicle further belies an argument that there was any expectation, reasonable or otherwise, of privacy in that number.

There remain questions, however, regarding the legitimacy of Defendant Steffey's entry into the garage in order to obtain the VIN.[8]   It is undisputed that Plaintiffs did not consent to the entry into the garage and correlated search thereof; it is also undisputed that Defendant Steffey had no warrant when he entered the garage.  He does not suggest that he could see the VIN from outside of the garage.  Moreover, the Toyota had been blocked into the garage by a police car, and several other officers were on the scene at the time of Defendant Steffey's entry.  There is no evidence to support an argument that, for example, officers were unable to secure the scene while a warrant was obtained, or that destruction or removal of the car or VIN was imminent.  Moreover, any relevant "pursuit" was long over by the time Defendant Steffey entered the Plaintiffs' garage.  In other words, there can be no legitimate argument based on either exigent circumstances or plain view.   Defendants' arguments implicate no other exception to the warrant requirement.

---

[8]Moreover, "the State's intrusion into a particular area . . . cannot result in a Fourth Amendment violation unless the area is one in which there is a 'constitutionally protected reasonable expectation of privacy.'" New York v. Class, 475 U.S. 106, 112, 106 S. Ct. 960, 89 L. Ed. 2d 81 (1986) (quoting Katz v. United States, 389 U.S. 347, 360, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967). Defendants cite, in fairly cursory fashion, to the principle that officers are not prohibited from entering business premises, during business hours, in a manner expected of the public.  Therefore, they argue, Plaintiffs had no legitimate expectation of privacy in the garage at issue.  Plaintiffs argue, just as cursorily, to the contrary.  Plaintiffs, however, have proffered testimony that the garage was not open to the general public; Defendants' assertions to the contrary are unsupported by record evidence.

As regards Defendant Hanna's entry into the garage to seize the license plate, I reach a similar conclusion.  It is undisputed that Officer Hanna observed husband-Plaintiff remove the license plate from the vehicle, and place it in the garage in a file folder mounted on the wall inside the garage.  Husband-Plaintiff then declined to turn over the plate, upon request.  Defendant Hanna then entered the garage and seized the plate.  He testified that he feared the evidence would be destroyed had he waited for a warrant.  In that vein, Defendants' sole defense of this conduct suggests both exigent circumstances and the "plain view" doctrine.

As discussed above, however, exigent circumstances did not exist, and I cannot find his conduct objectively reasonable on those grounds.  Also pertinent to that issue, it is clear that Defendant Hanna was capable of calling for backup, as he in fact did so, and there is no suggestion that either Plaintiff attempted to take any action with respect to the subject license plate, after its initial placement into the file folder.  Similarly, there is no argument that the plate was visible from outside the garage. Based on the arguments and facts here  presented, there is no basis for finding a lawful right of access to the subject license plate.[9]

### 4.  Delay in Medical Treatment

Next, I address Plaintiffs' claim based on the alleged delay in medical

---

[9]As regards qualified immunity, Defendant Steffey's argument, without any legal citation, is based on the contention that the driver of a suspicious vehicle could avoid a search by driving into a garage.  Of course, with a warrant, or an exception to the warrant requirement, driving into a garage does not preclude search.  Without a warrant or proper exception, of course, that driver might properly avoid a search.  Defendant Hanna's qualified immunity argument is based, primarily, on his fear that the license plate would be destroyed.  Under the facts here presented, however, the officers would not be entitled to qualified immunity.  At a minimum, a reasonable officer in this situation would not have thought that warrantless entry onto the garage was justified.

treatment for effects of the pepper spray.[10]  Nevertheless, an arrestee is entitled to medical care while in custody; a delay of care may violate the constitution if it constitutes deliberate indifference to a serious medical need.  E.g., Jennings v. Fetterman, No. 06-1058, 2006 U.S. App. LEXIS 21080, at **6-7 (3d Cir. July 27, 2006).  "The nature of pepper spray is to cause pain that dissipates without causing serious injury." Britton v. Lowndes County Sheriff's Dep't, No. 1:04CV160, 2005 U.S. Dist. LEXIS 31648, at **15-16 (D. Miss. Nov. 17, 2005).  Following pepper spray, it is reasonable to wait until an arrestee is returned to the police station, and is in a more stable situation, to render treatment.  Davis v. Township of Paulsboro, 421 F. Supp. 2d 835 (D.N.J. 2006).

Here, Plaintiffs assert that husband-Plaintiff was left untreated, with his eyes burning, for up to 46 minutes.  He received treatment for the effects of the spray when he arrived at the police department.  He does not aver any permanent injury; only significant but temporary stinging.  This is not, therefore, a serious medical need requiring immediate treatment.  Under the circumstances, as a matter of law, forty-six minutes is not an excessive or undue delay that could rise to the level of deliberate indifference or a constitutional violation.  Judgment will be entered accordingly.

**5.  State Law Claims**

    **a. False imprisonment**

---

[10]Plaintiffs cannot maintain an Eighth Amendment claim, as the pepper spray incident on which that claim is based arose prior to the conviction of a crime.  See, e.g., Ingraham v. Wright, 430 U.S. 651, 671-672, n. 40,  97 S. Ct. 1401, 51 L. Ed. 2d 711 (1977).

Next, I assess Plaintiffs' false imprisonment claim. According to their Brief, this claim is grounded in the allegation that Defendant Steffey, by shoving wife-Plaintiff and preventing her from moving toward the car, falsely imprisoned her. A claim of false imprisonment requires, in pertinent part, a showing that Defendant acted with the intent to confine Plaintiff within boundaries fixed by him. Pennoyer v. Marriott Hotel Servs., 324 F. Supp. 2d 614, 619-620 (E.D. Pa. 2004). Moreover, the confinement "must be complete. If there is a known, safe means of escape, involving only a slight inconvenience, there is no false imprisonment." Id. at 620.

Here, even taking the facts in the light most favorable to Plaintiffs, there was no actionable confinement. Indeed, wife-Plaintiff testified that after she was shoved, she left the area and went down to the car lot; when she returned, the police officer Defendants had left, so she proceeded to the police station. Merely preventing wife-Plaintiff from touching a particular object - here, the vehicle under investigation - is simply not the equivalent of circumscribing her movement within particular boundaries. It is not, in other words, confinement or imprisonment of any kind. This claim cannot proceed, and judgment will be entered accordingly.[11]

## B. **False Arrest, Malicious Prosecution, and Abuse of Process**

I next address Plaintiffs' remaining state law claims. Whether raised under Section 1983 or state law, claims for false arrest, malicious prosecution, and abuse of process require a lack of probable cause. E.g., Marable v. W. Pottsgrove Twp., No.

---

[11]For the same reasons, wife-Plaintiff's movements were not restricted in such a way as to effect a Fourth Amendment seizure of her person.

03-CV-3738, 2005 U.S. Dist. LEXIS 13754, at **18-19 (E.D. Pa. Jul. 8, 2005) (Section 1983

false arrest and malicious prosecution); Brockington v. Philadelphia, 354 F. Supp. 2d

563, 572 n. 10 (E.D. Pa. 2005) (state law false arrest and imprisonment).  Probable

cause means "facts and circumstances ... that are sufficient to warrant a prudent

person, or one of reasonable caution, in believing, in the circumstances shown, that

the suspect has committed, is committing, or is about to commit an offense."

Newsome v. Whitaker, No. 03-3182, 2005 U.S. Dist. LEXIS 3446, at *14 (E.D. Pa. Mar. 4,

2005).  A guilty plea establishes the existence of probable cause.  See Imbergamo v.

Castaldi, 392 F. Supp. 2d 686, 696 (D. Pa. 2005).[12]  In this case, both Plaintiffs pleaded

guilty to disorderly conduct.  Therefore, at a minimum, there is no genuine issue

that there was probable cause to prosecute both of them on those charges.

These claims fail for additional reasons.  A claim for malicious prosecution

requires, as implied by its name, that the subject prosecution occurred with malice.

In re Larsen, 532 Pa. 326.  Similarly, abuse of process requires that process be used

for a purpose other than that for which the process was designed.  Hart v. O'Malley,

436 Pa. Super. 151.  Defendants suggest the evidentiary deficiencies in that regard,

and Plaintiffs have failed to respond as required by summary judgment standards.

Accordingly, judgment will be entered on Plaintiffs' state law claims for false arrest,

malicious prosecution, and abuse of process.

## 6. Municipal Liability

---

[12]Moreover, as discussed supra, husband-Plaintiff could have been properly arrested based on the expired registration and loosely attached license plate.  Wife-Plaintiff, of course, was not arrested at all.

Finally, I address the issue of the municipal defendants' liability. Plaintiffs defend a single claim against Manor Borough, involving the lack of an appropriate policy regarding the speed with which medical treatment must be obtained, including for pepper spray. I assume, therefore, given the breadth of Defendants' Motion in this regard, and Plaintiffs' lack of additional response thereto, that Plaintiffs do not intend to assert any additional claims against the Borough.[13] If a plaintiff fails to establish an underlying constitutional violation, then summary judgment is appropriate on a municipal liability claim made pursuant to Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978). Los Angeles v. Heller, 475 U.S. 796, 799, 89 L. Ed. 2d 806, 106 S. Ct. 1571 (1986). Because Defendants are entitled to summary judgment regarding the alleged delay in medical treatment for the pepper spray, there can be no Monell claim premised on that action.

With respect to Penn Township, Plaintiffs claim that the Township's policy, which Plaintiffs characterize as one of treating every vehicle stop as a stolen vehicle investigation, caused Defendant Steffey to conduct an impermissible search and use excessive force. Notably, Plaintiffs do not argue that this policy is unconstitutional in itself. Moreover, the sole evidence to which Plaintiffs cite in support of that proposition is the testimony of Defendant Steffey, suggesting that it is general policy to obtain a VIN when there is a falsified plate, or a plate removed from a

---

[13]Plaintiffs also appear to raise the possibility of failure to train claims against the Township and Borough, but adduce absolutely no evidence in response to Defendants' Motions thereon.

vehicle, in order to "verify ownership and determine whether the vehicle was stolen."

"Where a city's official policy is constitutional, but the city causes its employees to apply it unconstitutionally, such that the unconstitutional application might itself be considered municipal policy, the city may be held liable for its employees' unconstitutional acts." Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 125 (2d Cir. 2004). In that case, the analysis focuses on whether the conduct in question may be said to represent the conscious choices of the municipality. Id. at 126. Under these circumstances, Monell requires that the particular policy be the "moving force" behind a constitutional violation. Colburn v. Upper Darby Twp., 946 F.2d 1017 (3d Cir. 1991). "But-for" causation is not enough to prove a causal connection under Monell. Van Ort v. Estate of Stanewich, 92 F.3d 831 (9th Cir. 1996). Plaintiffs' mere statement that the policy could "arguably" permit the warrantless search here, "if there was probable cause to believe that the vehicle was stolen, which there was not in this case," is wholly insufficient to connect the conduct with the alleged policy.

A policy requiring police to obtain a VIN number under circumstances such as those unarguably present here certainly caused Defendant Steffey to obtain the VIN, in a but-for sense; the policy, however, cannot be said to have proximately caused a warrantless search of Plaintiffs' garage or been the moving force behind the alleged injury. Indeed, Defendant Hanna had already been informed of the "dead" plate and arrived at the possibility that the vehicle or plate had been stolen;

Defendant Steffey relied on various information from Defendant Hanna regarding the altercation and events preceding his arrival.  It simply cannot be said that the Township caused Defendant Steffey to apply the subject policy in an unconstitutional manner.

## IV.  **Remaining Claims**

The remainder of Plaintiffs' claims can be dealt with summarily.  Moreover, Pennsylvania does not recognize a private cause of action for official oppression. Demeter v. City of Bethlehem, No. 03-6825, 2004 U.S. Dist. LEXIS 4386, at *12 (Feb. 13, 2004 E.D. Pa.).  Finally, Plaintiffs appear to have abandoned or otherwise do not intend to pursue their claims for defamation,[14] civil conspiracy, procedural due process, and equal protection, as well as any claims based on the Fifth Amendment to the U.S. Constitution, and the Pennsylvania Constitution.  They do not counter Defendants' arguments on these points, and I will not engage in sua sponte defense of the Amended Complaint.[15]   Accordingly, summary judgment will be entered on each of the foregoing causes of action.  In contrast, I will not enter judgment on Plaintiffs' claim for punitive damages, as the propriety of such damages will be left

---

[14]Plaintiffs mention that their defamation claim should proceed to trial, but proffer no defense of that claim.

[15]Finally, Plaintiffs do not dispute that they cannot maintain claims against individual officers regarding activity in which those individuals were wholly uninvolved; they cannot, for example, proceed against Defendant Johnson for the conduct of other officers, that occurred in his absence.  Similarly, Defendant Steffey did not effect the arrest of either Plaintiff, and cannot therefore be sued for such arrests.  I need not separately address each of those matters at this time, as those are more easily dealt with at later stages of the litigation, such as instructions to the jury.

to the jury.[16]

## CONCLUSION

In sum, Defendant have met their burden of demonstrating entitlement to summary judgment on all claims subject to their Motion, other than those against the individual officers based on free speech, the searches and seizures occurring in the garage, and the pepper spraying of husband-Plaintiff.   In other words, remaining in this action are pertinent portions of Counts I and IA of the Complaint; Counts II through IX (misnumbered in the Amended Complaint) will not be permitted to proceed.

Several aspects of my Order today are based on deficiencies in the parties' pleadings or the record, rather than on a decisive evaluation of undisputed fact.  I realize, therefore, that the parties may wish to raise additional issues with the Court. If so, they will be permitted to opportunity to file additional motions.

AND NOW, this **1st** day of November, 2006, it is ORDERED that Defendants' Motions for Summary Judgment (Docket Nos. 41  and 43) are GRANTED in part and DENIED in part.  Summary judgment is DENIED as to Plaintiffs' claims against the individual Defendants based on freedom of speech or expression, excessive force against husband-Plaintiff, and unreasonable search and seizure, as stated in the foregoing Opinion.  The Motions are GRANTED in all other respects, and judgment is entered accordingly.

---

[16]A reasonable jury believing Plaintiffs' version of the facts could find that certain of Defendants' conduct  showed a reckless or callous indifference to federally protected rights.  Smith v. Wade, 461 U.S. 30, 56, 75 L. Ed. 2d 632, 103 S. Ct. 1625 (1983) .

It is further Ordered that  within seven  (7) days from today's date, any party may seek leave to file an additional motion for summary judgment.   When doing so, that party shall specifically identify the issue(s) on which the intended motion for summary judgment will be based.   If leave is granted, the motions shall proceed on an accelerated schedule to be set by the Court.


BY THE COURT:



/S/   Donetta W. Ambrose

 Donetta W. Ambrose,
 Chief U. S. District Judge